Since, in an action against a carrier for damages to personal property in transit, the measure of damages is ordinarily the difference in the market value of the property when it arrives at its destination, and what the value would have had it not been damaged when it arrived, if the carrier wishes to contend that the wholesale and not the retail price of the property should govern in fixing the amount of damages, facts supporting such contention should be specially pleaded.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 131.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by E. T. Barden against the Houston & Texas Central Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and Lane, Wolters & Storey, for appellant. E. P. & Otis K. Hamblen, for appellee.

NEILL, J. Appellee sued appellant and the Chicago, Rock Island & Gulf Railway Company to recover damages to an automobile sustained in the transportation of the same from Buffalo, N. Y., to Houston, Tex. The defendants answered only by a general denial. It was admitted on the trial that the Houston & Texas Central Railroad Company was solely responsible, if the automobile was damaged in transit, and the suit was dismissed as to its codefendant. The case then proceeded to trial against the appellant, which resulted in a verdict and judgment against it for $1,073.68, with interest at the rate of 6 per cent. per annum from date of the delivery of the machine. The evidence shows that the automobile was shipped to plaintiff from Buffalo to Houston, and was uninjured and in good condition when received from its connecting carrier by the appellant; that, when delivered at destination, it had been injured; that the difference in the market value of the machine at Houston at the time it reached there in its damaged condition and what it would have been if uninjured was $1,073.68, as found by the jury.

Under the first and second assignments of error, this proposition: "Where personal property is injured in transit, and the rule of damages applied is the difference between the market value of the article in the condition in which it was when delivered and the condition in which it should have been delivered, the wholesale and not the retail price of such article should govern in fixing the amount of damages"—is asserted. No special charge embodying the proposition was requested, nor would the evidence excluded have tended to show the wholesale market value of the machine. Ordinarily in a case like this the measure of damages would be, as charged by the court, the difference in the market value of the automobile when it arrived at Houston and what that value would have been had it not been damaged when it arrived. If there were any facts which would take the case from the operation of the general rule and reduce the damages as measured by it, it would seem upon principle that they should have been specially pleaded.

The court did not err in overruling the defendant's motion for a new trial, for the evidence fully sustains the verdict.

The witness Wilson did not qualify himself to testify as to the market value of the machine, and his testimony was properly excluded.

There is no error in the judgment, and it is affirmed.

---

YEAGER v. SCOTT & SANFORD.

(Court of Civil Appeals of Texas.   Oct. 26, 1910. Rehearing Denied Dec. 7, 1910.)

1. APPEAL AND ERROR (§ 1002*) — VERDICT — CONCLUSIVENESS.

A verdict on conflicting evidence and under proper instructions will not be disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

2. APPEAL AND ERROR (§ 1040*) — HARMLESS ERROR — RULINGS ON PLEADINGS.

The error, if any, in sustaining exceptions to the petition so far as it seeks to recover at-

---

torney's fees on a note, is harmless when plaintiff failed to recover anything.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4097; Dec. Dig. § 1040.*]

3. CONTRACTS (§ 54*)—CONSIDERATION.

An agreement by an attorney with other attorneys employed to assist him that they could collect from the client a specified fee for their exclusive use, leaving open the question of his fee, whereby the other attorneys abandoned their right to a share in a larger ' sum which the client had originally agreed to pay, is supported by a sufficient consideration.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 233–239; Dec. Dig. § 54.*]

Appeal from District Court, McLennan County; Marshall Surratt, Judge.

Action by J. E. Yeager against Scott & Sanford. From a judgment for defendants, plaintiff appeals. Affirmed.

Wm. M. Flournoy, for appellant. J. E. Yantis, O. L. Stribling, and Cross & Gross, for appellees.

RICE, J. This suit grew out of a disagreement between the parties, who were attorneys at law, relative to a fee collected by one of them from their client, Miss Jennie Chamberlain. It seems that, prior to the institution of this suit, appellant had been employed by Miss Chamberlain to institute a partition suit against her mother, Mrs. Ruth Chamberlain, for her portion of their joint estate, estimated to be of the value of over $200,000. It appears that appellant, on account of the large amount involved, as well as the array of counsel representing Mrs. Chamberlain, deemed it advisable to procure assistant counsel, and thereafter sought and procured the consent of his client to associate with him Messrs. Scott & Sanford, attorneys of the Waco bar, to aid him in such litigation. It further appears that such employment involved not only said partition suit, but likewise contemplated that they should represent her in certain proceedings in the probate court, wherein a receiver had been applied for and the property ,of Miss Chamberlain turned over to her mother as receiver; and likewise the setting aside of an order which Mrs. Chamberlain had procured, decreeing that her said daughter was of unsound mind.

We deem it unnecessary to set out in full the pleadings raising numerous other issues than those submitted by the court in its charge to the jury, because we think the charge. as given covered all the material issues presented by the pleadings and raised by the evidence. The plaintiff contended that he only employed Messrs. Scott & Sanford to aid him in one branch of the case, to wit, the receivership proceedings, for which a fee was arranged commensurate with this service, and that the larger fee of $4,500, which was agreed upon, should be equally divided between them if they par-

ticipated in the partition suit, which it was alleged they did not do; that he was entitled to $750 of a $1,000 fee which he alleged was paid by his client to Messrs. Scott & Sanford in trust for him, after a compromise had been effected, and -for which amount he sued, together with attorney's fees. Appellees, on the contrary, denied this, and asserted that the fee of $4,500 was agreed upon for attention to the entire litigation, but that, since a compromise had been effected, it was subsequently agreed between plaintiff and themselves that they should receive $1,000, which was paid by their client for their exclusive benefit, leaving open for future adjustment plaintiff's portion of said fee between himself and his client. In this connection we think the evidence clearly establishes the fact that, at the time of the employment of Messrs. Scott & Sanford by Miss Chamberlain, it was agreed between her, plaintiff, and defendants, that they were to charge her a joint fee of $4,500, which was to be equally divided between them, but that said agreement did not contemplate that Scott & Sanford should participate in or be entitled to a division of any part of a fee of $1,000 which had been previously agreed upon between Miss Chamberlain and the plaintiff, $500 of which had, prior thereto, been paid to plaintiff; but it was specially understood and agreed that the plaintiff, in addition to his one-half of said $4,500, should be entitled to receive the balance of said' $1,000 then unpaid, evidenced by her note previously given to him therefor. After their employment Judge Scott, together with plaintiff, appeared in the county court and argued a motion to vacate the receivership, which was overruled, and from which an appeal was prosecuted to the district court. It also appears that plaintiff, prior to the association of Scott & Sanford with him, had filed partition proceedings in the district court. No further action, however, was taken in said litigation 'by any of said counsel in the courts, except to procure a dismissal of said pending litigation in pursuance of the compromise which had been agreed upon between the parties. There is evidence showing that Mr. Sanford, at the instance of plaintiff, represented Miss Chamberlain in an effort to compromise this litigation, which extended over a period of some three months. It is true that plaintiff pleads that, by reason of the fact that he was leading counsel, he had the right to have all matters pertaining to this compromise submitted to him for his approval before final agreement, and that this was not done; but, on the contrary, it was shown that the agreement was submitted to him and that he approved it. In view of the compromise, it appears that both plaintiff and defendants concluded that

it was right to reduce the amount of their fee; but it is asserted by plaintiff that he did not participate in the negotiations between Mr. Sanford and his client with reference to the reduction thereof, and he specially denies that he did agree that Messrs. Scott & Sanford should receive a fee of $1,000 for their exclusive use and benefit, and that he was to look to his client for the payment of his portion of the fee; while, on the contrary, it appears from the testimony that he was fully advised of all matters pertaining to the compromise, as well as the reduction of the fee, and that he finally agreed that Messrs. Scott & Sanford should receive for their exclusive use and benefit $1,000 from Miss Chamberlain, in full satisfaction of their portion of said fee, and that his portion was to be left open for future adjustment between himself and his client. These issues were, in a clear and terse charge, presented for the consideration of the jury by the learned trial court, and were resolved by them in favor of defendants.

Plaintiff likewise alleged that the contract pleaded by Messrs. Scott & Sanford, wherein he agreed for them to receive $1,000 of the fee paid them by Miss Chamberlain for their exclusive use, and that he would look to his client for his part of said fee, was without consideration and void. In addition to his suit for the recovery of $750 of said fee so collected from Miss Chamberlain by appellees, based on their alleged obligation to hold Miss Chamberlain harmless against his future claim against her for his part of the fee, he sought to recover 10 per cent. attorney's fees on the $500 note executed to him by Miss Chamberlain, on the ground that its payment had been delayed by the action and conduct of appellees; and also sought to recover $200 as attorney's fees from them, on the basis that they had willfully withheld said $750 from him which he alleged was paid in trust by his client to them for him.

The first and second assignments complain of the action of the court in sustaining exceptions to plaintiff's petition, seeking to recover attorney's fees. We do not think there is any merit in this contention. There is nothing alleged that would, in our judgment, authorize the recovery of attorney's fees. Besides, if this was error, it is harmless for the reason that the plaintiff failed to recover anything.

The fifth assignment questions the action of the court in refusing to give plaintiff's requested instruction to the effect that there was no consideration to support the alleged agreement allowing appellees to collect for their exclusive use the $1,000, leaving the matter of his fee open. The record shows, as testified to by Mr. Sanford, that appel-

lant agreed to this, chiefly on the ground that he would thereby be entitled to collect a larger fee from his client than was allowed in the compromise. Besides this, appellees, by reason of the compromise, had abandoned their right to their portion of the $4,500, which of itself would be sufficient consideration to support the agreement. We do not believe that the evidence supports the contention that the settlement made by Mr. Sanford with reference to the fee in any way deprived the plaintiff of the right to assert any cause of action he may have had for his fee as against his client, and think the court properly refused the charge presenting this question.

Appellant insists that the verdict in unsupported by the evidence. After a careful review of the evidence, we are inclined to think it is ample in this respect.

The remaining assignments have been duly considered, but in our judgment are not well taken, and are therefore overruled.

Finding no error in the record, the judgment of the court below is affirmed.

Affirmed.